(87 Misc. Rep. 439)

### SMITH et al. v. HEDGES.

(Supreme Court, Special Term, Kings County. November, 1914.)

1. COUNTIES (§ 46*)—COMPENSATION OF SUPERVISORS—"WRITTEN LINES"—"LINES EXTENDED"—"ASSESSMENT ROLL."

As used in County Law (Consol. Laws, c. 11) § 23, authorizing the board of supervisors to allow to each member, for his services in making a copy of the assessment roll, a certain amount for the written lines and a certain amount for lines extended, the "assessment roll" does not include the recapitulation books, "written lines" does not include the headings of the

pages of the books, nor does the term "lines extended" include extensions which are not lines of the tax roll actually extended by the member.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 54; Dec. Dig. § 46.*

For other definitions, see Words and Phrases, First and Second Series, Assessment Roll.]

2. COUNTIES (§ 196*)—TAXPAYER'S ACTION—PARTIES—"TAXPAYER."

Where an assessment was against the "estate of R. B. S." on 900 acres of land, and plaintiff and his sister were tenants in common of the land as heirs of decedent, and plaintiff had paid the assessment, he was a "taxpayer," within the statute authorizing a taxpayer's action.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 308; Dec. Dig. § 196.*

For other definitions, see Words and Phrases, First and Second Series, Taxpayer.]

3. COUNTIES (§ 206*)—OFFICERS—COMPENSATION—AUDIT—CONCLUSIVENESS.

In a taxpayer's action to recover, on behalf of a county, money improperly allowed by the board of supervisors, under County Law, § 23, to a supervisor for copying written lines of the assessment roll and extending certain lines on the tax rolls, the audit of the board of supervisors was not conclusive.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 322, 323, 325–330; Dec. Dig. § 206.*]

Action by William Sidney Smith and all others in a similar position who are taxpayers of Suffolk County, N. Y., against Dayton Hedges. Judgment for plaintiffs.

Selah B. Strong, of Brooklyn, for plaintiffs.

Baylis & Sanborn, of New York City (Willard N. Baylis, of New York City, and John R. Vunk, of Patchogue, of counsel), for defendant.

BLACKMAR, J. [1] This is an action by plaintiff, an alleged taxpayer of Suffolk county, to recover on behalf of the county from the defendant, the supervisor of the town of Brookhaven, certain moneys allowed to defendant by the board of supervisors, under section 23 of the County Law, for copying written lines of the assessment roll of the town of Brookhaven and extending certain lines of the tax rolls. The action is based on the claim that the defendant was allowed and paid for more lines than he had in fact copied and extended.

The primary question of fact in the case is: What is the number of written lines of the assessment roll copied and the number of lines of the tax rolls extended? The rolls were all introduced in evidence. They fill about 70 large volumes, each measuring in size about three feet in length by two in width, and each containing about 400 pages of heavy paper. When stacked up in the courtroom, the cubic measure of the pile seemed to be about a cord. The defendant claims that there were upwards of 2,700,000 items, for which he has been justly paid at the rate of one cent each. The decision of the question of fact presented on the pleadings depends upon the number. The plaintiff introduced two witnesses in the employ of a certified public accountant, who testified that they had counted the number of lines and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

so-called extensions, and found the number much less than the defendant had been paid for. On the other hand, the defendant called witnesses who testified that they had counted the lines, and the defendant testified that he used the count of one of these witnesses as the basis of his bills. From the testimony of these witnesses it appears that the differences are in great measure explained by the different definitions which the witnesses gave to the words "written lines" of the assessment roll and "lines extended" of the tax rolls. The defendant's witnesses counted as a line the heading of each page, which consisted of the name of the town and the last figure of the year written in a blank. The plaintiffs' witnesses did not. The defendant's witnesses counted all the lines in recapitulation books. The plaintiffs' witnesses did not. For "extensions," inaccurately used by all the witnesses as synonymous with the statutory term "lines extended" in the tax rolls, the defendant's witness Beach, upon whose count defendant based his bills against the county, testified that he counted "any item under the tax column or returned school tax column, lighting column, fire column, and total tax column, and the footings of these columns."

Section 23 of the County Law authorized the board of supervisors to allow to each member of the board for his services in making a copy of the assessment roll—

"three cents for each written line for the first one hundred lines, two cents per line for the second hundred written lines, and one cent per line for all written lines in excess of two hundred, and one cent for each line of the tax roll actually extended by him."

The headings of 20,000 or 30,000 pages of the books, consisting of the written word "Brookhaven" and the figure of the year, are not written lines of the assessment roll. The recapitulation books are not part of the assessment roll. The witness Beach has counted, and the defendant has included in his bill, many thousand "extensions" which are not "lines of the tax roll actually extended by him." The statute authorized the payment of one cent for each line of the assessment roll extended to make the tax roll. The primary meaning is one physical line. This meaning has been enlarged by the case of Pearsall v. Brower, 120 App. Div. 584, 105 N. Y. Supp. 207, to include each separate tax extended, although on the same line. The defendant has gone far beyond, and has counted all entries in the total tax columns and all footings. These items aggregate several hundred thousands, and for the year 1912 he added to his bill $750 or $1,000 as an estimate for making an additional copy, although I find no warrant in law for paying him for more than one. There is no room for any charge of fraud against the defendant, for I find that the excess of the payments to him have been due to an erroneous interpretation of the statute as to the meaning of the words "written lines of the assessment roll" and "lines of the tax rolls actually extended by him," and to the added estimated cost of an additional copy for 1912.

Excluding the recapitulation books and including the 31 volumes of subdivided tracts, for copying which I find he is entitled to pay, I find that the defendant copied 418,805 written lines of the assessment roll of 1910 and extended 212,019 lines of the tax roll, for which he is

entitled to receive $6,311.24, and that he actually received $10,200.02. I find that he copied 478,913 written lines of the assessment roll of 1911 and extended 309,025 lines of the tax roll, for which he was entitled to receive the sum of $7,882.38, and that he actually received $12,242.51. I find that he copied 70,332 written lines of the assessment roll of 1912 and extended 76,136 lines of the tax roll, for which he was entitled to receive the sum of $1,467.58, and that the sum actually received was $4,647.04. There was therefore overpaid in 1910, $3,888.78; in 1911, $4,360.13; and in 1912, $3,179.46—in all, for the three years $11,428.37.

[2] There remains the question whether this sum may be recovered in this action. To this the defendant has opposed two objections: First, that plaintiff is not qualified to bring the action; and, second, that the audit of the board of supervisors is conclusive against a collateral attack like this. At common law no such action could be maintained. It is a creature of statute, and maintainable only if the conditions prescribed by statute exist. It is objected that the plaintiff is not a taxpayer within the meaning of the statute, because no tax is assessed against him personally. The assessment was for $16,000 in terms against the "Estate of Robert B. Smith" upon 900 acres of land. It is in evidence that plaintiff and his sister owned the land as tenants in common, as heirs of Robert B. Smith, deceased, and that plaintiff paid the tax. The law authorizing a taxpayer's action to recover for waste of the property of a municipality is a remedial statute. Without it many wrongs against the community would be unredressed. What the law requires as a condition to maintaining the action is a personal interest in the plaintiff as a taxpayer, so that a portion of the burden of waste of the public funds falls on him. This is the condition of the plaintiff in this case. It is therefore within the spirit of this remedial statute. There was a time when a misnomer in the assessment nullified the tax, but now by statute the tax is valid as a lien on the land, although the owner is not liable for it as a debt. Practically the tax levy is now against the land, and little attention is paid to the name against whom it is assessed. I think the plaintiff may maintain the action.

[3] The question of the conclusiveness of the audit against a collateral attack is more serious. It seems to me that a logical application of the rules of law would lead to the conclusion that the audit is conclusive, except as against a direct attack by certiorari. Especially is this true in this case, in view of section 24 of the County Law, which gives the board of assessors authority to act on evidence by affidavits. In this case such affidavits were presented. Obviously the board, although empowered by law to require further evidence, saw fit to rest their audit on the affidavits which were legal evidence of the facts. Their act was quasi judicial in its nature. It was based on evidence upon which they were authorized to act by explicit provision of section 24 of the County Law, and it seems to me that, reasoning from well-settled rules of law, it is res adjudicata as to the validity of the claim. The fact that other evidence shows that the supervisors erred does not deprive them of jurisdiction. But the law does not always

proceed according to rules of logic. The application of the law to the facts of life is not an exact science. Oftentimes the conclusion to which reasoning on abstract propositions of law would necessarily lead is avoided, and arbitrary rules are laid down. It seems to be so on this question. The Appellate Division of this department has held that exactly such 'an action as this may be maintained. Pearsall v. Brower, supra. Why should I, sitting as a judge in a court which is bound to take the law from the Appellate Division, reason on abstract propositions of law when there is direct and recent precedent to follow; and that by the very court which has power to review my decision? I have examined the briefs of counsel in the Pearsall Case and find that the point was not raised, and it is not discussed in the opinion. But the point lies on the surface, its decision was necessary to the judgment rendered, and it is therefore my duty to follow the precedent. If I am misled by the decision, the Appellate Division may set it right.

The plaintiff is entitled to judgment that the county of Suffolk recover of the defendant the sum of $11,428.37, with interest from the respective dates of payment, and dismissing the counterclaim on the merits. There should be costs and an extra allowance of $500 awarded plaintiff.

Judgment accordingly.